```
          UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

**SIDNEY V. BARKER,**

      Plaintiff,

v.                                        Civil Action No. 2:07-0815
                                               (Lead Case)

**JOHN A. KING D.O. and
DAVID MCNAIR and
TEAYS VALLEY HEALTH SERVICES, INC. and
D/B/A PUTNAM GENERAL HOSPITAL and
HCA, INC. and
HEALTHTRUST, INC. – THE HOSPITAL COMPANY and
HOSPITAL CORP, L.L.C. and
WRIGHT MEDICAL TECHNOLOGY, INC. and
ROBERT EDWARDS AKA BOB EDWARDS and
EBI L.P.,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are plaintiff's consolidated motion to remand, filed December 27, 2007, and defendants' motion for leave to file a surreply, filed February 7, 2008.[1] The court ORDERS that the motion for leave to file a surreply be, and it hereby is, granted.

---

[1] On December 21, 2007, the court designated this action as the lead case among a total of 124 cases that were removed from the Circuit Court of Putnam County. During an earlier, December 20, 2007, telephonic status conference, counsel advised the remand issues presented in this action would be identical to those presented in the remaining 123 cases. Consistent with the December 21, 2007, order, the consolidated motion to remand is treated as applying to each of the 124 removed cases. Consequently, the relief granted in this memorandum opinion and order is fully applicable to, and effective in, the balance of the removed actions.

I.

On November 5, 2002, defendant Teays Valley Health Services, Inc., doing business as defendant Putnam General Hospital ("Putnam General"), granted temporary privileges to defendant John A. King, D.O. ("Dr. King") to practice orthopedic surgery at its facility.  (Pl.'s Memo. in Supp. at 1).  According to plaintiff, at the end of the seven-month period that followed, Dr. King's clinical privileges were summarily suspended on a temporary basis.[2]  (Id.)  The suspension was due in part to the testimony of Dr. Edgar G. Dawson, a now-deceased Clinical Professor of Surgery and Orthopedics and Attending Surgeon at the University of California.  Dr. Dawson opined, apparently in a peer review setting, that Dr. King

> was a "snake-oil salesman", [and] that it was a "matter of luck" that none of . . . [Dr. King's] patients had suffered severe complications and/or death . . . .

(Ex. 1, Pl.'s Mot. to Remand).

---

[2]Much of the procedural and factual history found in plaintiff's memorandum of law lacks citations to objective sources supporting its contents.  The court accepts the accuracy of the assertions for purposes of this motion if they have not been specifically countered by defendants in their response brief.

In Fall 2004, the aforementioned 124 civil actions were instituted in the Circuit Court of Putnam County against Dr. King and other defendants arising out of his tenure at Putnam General. (Pl.'s Memo. in Supp. at 1).  It is alleged generally by plaintiffs that Dr. King (1) operated on bone fractures that in actuality did not exist and actual bone breaks that would have been properly treated with only splinting or casting, (2) used medical devices inappropriately during surgical procedures, (3) performed unnecessary spinal and cervical surgeries and joint replacements, (4) amputated limbs unnecessarily, and (5) "secretly conducted human experimentation using medical procedures and devices that had failed in lab animals."  (Id. at 1-2).  It is further alleged that he caused at least three deaths.  (Id. at 2).

Plaintiffs summarize the proceedings in the circuit court up to the time of removal:

> [T]he parties . . . have literally spent millions of dollars and thousands upon thousands of hours conducting discovery and in developing a uniform case management plan that would allow for the orderly progression and resolution of all of the lawsuits. Because of their number, the cases have been divided between the Honorable O. C. Spaulding and the Honorable Judge Edward N. Eagloski II . . . . [who] have consulted with one another, developed a Master Trial Plan . . . and . . . divided the discovery and other hearing issues . . . to allow the parties the opportunity to quickly resolve the multiple discovery

3

> disputes that have occurred.  This includes the allocation of two days each month just to hear discovery issues. . . .
>
> [They] . . . have already conducted a minimum of 30 hearings dealing with multiple discovery, scheduling, and pretrial issues.  Basic document and interrogatory discovery has already occurred in each case, with plaintiffs having produced tens of thousands of pages of documents supporting the claims of each of their clients for both liability and damages, as well as participating in over 120 depositions. . . . Rulings have been issued on multiple . . . [dispositive motions] filed by both . . . [sides].  Judge Spaulding has already conducted a three-week trial dealing with the negligent credentialing and privileging of King.  That trial resulted in a verdict finding that Putnam General was negligent in granting temporary privileges to King, and in doing so its actions . . . [warranted] an award of punitive damages.
>
> [T]he Circuit Court has entered a Master Case Management Plan and Scheduling Order establishing deadlines, bifurcating claims within individual cases, and establishing specific trial dates for individual cases . . . Discovery in the initial group of cases set for trial has essentially been completed and, in fact, all pretrial motions in the first four (4) cases have already been submitted to the Circuit Court, many of which have already been decided . . . .

(<u>Id.</u> at 2-3).

On August 31, 2006, plaintiff contends counsel for Putnam General "unequivocally represented to Judge Spaulding that [it] had no intention of settling any of the cases that had been filed against it, that it fully intended to try each separate case . . . and it was not interested in mediation."  (<u>Id.</u> at 4 n.2).  Plaintiff estimates it would "take more than seven (7)

years of trial time . . . before the Court could dispose of these cases." (Id. at 4).

On November 21, 2007, six days prior to the commencement of the first malpractice trial, Dr. King filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Northern District of Alabama. (Not. of Remov. ¶ 3; Pl.'s Memo. in Supp. at 3). Between December 12 and 19, 2007, defendants removed the 124 actions.[3] The notice of removal alleges, in part, as follows:

> Claims or causes of action in a civil action that are related to a pending bankruptcy case may be removed pursuant to 28 U.S.C. § 1452(a) . . . . In turn, 28 U.S.C. § 1334(b) gives district courts original jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." . . . .
>
> Th[is] Action is related to . . . King's Chapter 7 Bankruptcy Case in the Northern District of Alabama, because the outcome of this Action could affect the bankruptcy estate. Indeed, any of Plaintiff's claims, causes of action, or rights to relief must be pursued as claims in the Bankruptcy Case under 11 U.S.C. § 501. Plaintiff has asserted claims and causes of action against King and seeks money from him. Moreover, some if not all of the removing Defendants have asserted a cross claim against King seeking indemnity or contribution from him for any liability that may be imposed upon them as a result of the Action. . . .

(Not. of Remov. ¶¶ 4-5). Defendants additionally allege that

---

[3]Counsel advised the court that the notices of removal are identical in each case.

while non-core matters predominate in this action, "portions . . . . may constitute 'core' issues and proceedings in that they include matters concerning the administration and distribution of assets of the Chapter 7 bankruptcy estate, including insurance policies and their proceeds."  (Id. ¶ 6).

As noted, on December 20, 2007, the court conducted a case management teleconference with counsel.  Barker v. King, No. 2:07-0815, slip op. at 1 (S.D. W. Va. Dec. 21, 2007).  The December 21, 2007, order following the teleconference set a briefing schedule and stayed the cases pending a ruling on plaintiff's then-forthcoming motion to remand.  Id. at 2-3.

Plaintiff observes Dr. King's bankruptcy case "is of the simplest variety imaginable[,]" with the schedules listing no real or personal property save for a 1983 Volvo valued at $500. (Pl.'s Memo. in Supp. at 3).  The schedules additionally reflect that Dr. King is unemployed and has no current income or expenses.  The bankruptcy clerk has noticed potential claimants that "[t]here does not appear to be any property available to . . . pay creditors. . . . If it later appears that assets are available to pay creditors, you will be sent another notice telling you that you may file a proof of claim."  (Ex. 5, Pl.'s Mot. to Remand).  The presiding bankruptcy judge, the Honorable

6

Thomas B. Bennett, has entered lifting orders respecting eight of the pending civil actions, allowing them to proceed. (Ex. 7, Pl.'s Mot. to Remand).

In seeking remand, plaintiff asserts (1) the court lacks subject matter jurisdiction, and (2) assuming jurisdiction existed, the court should abstain pursuant to 28 U.S.C. § 1334(c)(1) or equitably remand the actions pursuant to section 1452(b). Defendants respond the court is seized with jurisdiction and should decline abstention or equitable remand.

## II.

A.   Subject Matter Jurisdiction

Title 28 U.S.C. § 1334(b) provides pertinently as follows:

> Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b) (emphasis supplied). Title 28 U.S.C. 1452(a) provides further as follows:

> A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).

The parties appear to concede the 124 removed actions neither arise under Title 11 nor in a Title 11 case. Reading these two statutes <u>in pari materia</u>, removal jurisdiction here becomes dependent upon these actions, or claims within them, being "related to" a case under title 11. Binding precedent provides significant guidance concerning what type of action qualifies as being "related to" a case under title 11. In <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300 (1995), the Supreme Court observed as follows:

> "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate," and . . . the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate.

<u>Id.</u> at 308 (quoting, in part, <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3rd Cir. 1984)). Following <u>Celotex</u>, our court of appeals discussed in greater detail the nature of a "related to" proceeding:

> A civil case filed in a district court is related to a case in bankruptcy if the outcome in the civil case

8

> "could conceivably have any effect on the estate being administered in bankruptcy . . . if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (<u>positively or negatively</u>) and which in any way impacts upon the handling and administration of the bankrupt estate." <u>Celotex</u>, 514 U.S. at 308, n. 6, 115 S.Ct. 1493 (quoting <u>Pacor</u>, 743 F.2d at 994) (internal quotations omitted) (italics in <u>Pacor</u>).
>
> This court has adopted the . . . related to test [of <u>Pacor</u>] and has held that a district court, "and derivatively the Bankruptcy court" has jurisdiction over an action related to a bankruptcy case "if the outcome [of the proceeding] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [the proceeding] in any way impacts upon the handling and administration of the bankrupt estate." <u>Spartan Mills v. Bank of Am. Ill.</u>, 112 F.3d 1251, 1255-56 (4th Cir.), <u>cert. denied</u>, 522 U.S. 969, 118 S.Ct. 417, 139 L.Ed.2d 319 (1997) (quoting <u>Pacor</u>, 743 F.2d at 994 (internal quotation marks omitted)). The Supreme Court gave the following as an example of a civil case related to a bankruptcy case: "suits between third parties which have an effect on the bankruptcy estate." <u>Celotex</u>, 514 U.S. at 307 n. 5, 115 S.Ct. 1493 (citing 1 Collier on Bankruptcy ¶ 3.01[1][c][iv] at 3-28 (15th ed. 1994)). Notably, as is the case here, a related to case need not necessarily be against the debtor or his property. Nevertheless, the "mere fact that there may be common issues of fact between a civil proceeding and a controversy involving a bankruptcy estate does not bring the matter within the scope of [1334(b)]." <u>Pacor</u>, 743 F.2d at 994. In this circuit, a civil case is related to bankruptcy if "the outcome of [the civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy." <u>In re Celotex Corp.</u>, 124 F.3d 619, 625 (4th Cir. 1997) (citing <u>Pacor</u>, 743 F.2d at 994), <u>see</u> <u>also</u> <u>A.H. Robins Co. v. Piccinin</u>, 788 F.2d 994, 1002 n. 11 (4th Cir. 1986).

<u>New Horizon of NY LLC v. Jacobs</u>, 231 F.3d 143, 151 (4th Cir. 2000) (footnotes omitted); <u>Spartan Mills v. Bank of America</u>, 112

9

F.3d 1251, 1255-56 (4th Cir. 1997) (quoting Pacor, 743 F.2d at 994); A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 1002 (4th Cir. 1986) ("The accepted definition of . . . 'related to' in these statutes is that declared in Pacor . . . .")

The standard for determining whether related-to jurisdiction exists is exceptional when one considers the oft-noted observation that federal courts in a removal setting are vested with limited power subject to a narrow construction. See Marshall v. Marshall, 547 U.S. 293, 309 n.3 (2006)(noting the "broad grant of jurisdiction conferred by § 1334(b) . . ."); Celotex Corp. v. Edwards, 514 U.S. 300, 307-08 (1995)("Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth. . . . We agree with the views expressed by the Court of Appeals for the Third Circuit . . . that 'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate . . . ."). Indeed, our court of appeals has observed "it is difficult to imagine any instance in which a bankruptcy court would not have jurisdiction if the debtor were a party" to the action under consideration. See A.H. Robins, 788 F.2d at 1002.

The jurisdictional grant though is not limitless.  As aptly put by the leading commentator, "litigation that would not have an impact upon the administration of the bankruptcy case, or on property of the estate, or on the distribution to creditors, cannot find a home in the district court based under the court's bankruptcy jurisdiction."  1 Collier on Bankruptcy § 3.01[4][c][v] (15th ed. 1999).

By filing a voluntary petition for relief, Dr. King commenced a case under Title 11.  The question is whether this action, and the mass removal, are "related to" that Title 11 case.  As noted, plaintiff contends "related to" jurisdiction is absent here.  He asserts Dr. King has disclosed no real or personal property of any significance and secured creditor claims are absent.

Defendants respond that the only evidence concerning Dr. King's assets comes from him alone, without a more searching inquiry by other interested parties.  They note additional assets might be discovered during the proceeding.  They additionally observe that (1) they may seek a non-discharge-ability determination against Dr. King pursuant to 11 U.S.C. § 532(a)(6), (2) Dr. King's assets include four civil actions with an unassigned value that he has previously instituted, and (3) while

11

plaintiff essentially asserts all claims against Dr. King are worthless, he remains a defendant in many, if not all, of the 124 cases in the mass removal.

Plaintiff replies, <u>inter alia</u>, that during the meeting of creditors the organizational defendants had counsel present but elected not to question Dr. King respecting his assets. Defendants surreply that they have now gathered the necessary documents for examining Dr. King further concerning assets he may own.

While plaintiff stresses the "no-asset" nature of Dr. King's Chapter 7 proceeding, defendants are correct that it is very difficult indeed to say with any certainty that the estate will consist only of the single motor vehicle identified by the debtor in his schedules. For instance, no one knows the value of the four scheduled actions instituted by Dr. King. It certainly will be the unusual case where the court will pause and assume jurisdiction awaiting further developments in the bankruptcy court. This case suggests a more cautious approach, however, if for no other reason than the debtor has been accused by plaintiff of such serious misdeeds and malfeasance. The court is also mindful of its obligation to at least initially assume jurisdiction given it when the outcome in a removed civil case could conceivably have any effect on the estate.

In sum, the outcome in these cases, which would doubtless constitute the largest claims in the debtor's Chapter 7 proceeding, could certainly alter his rights, liabilities, options, or freedom of action. They could also impact the handling and administration of the estate, whether that estate expands or contracts as the investigation into the debtor's holdings continues.

The court, accordingly, concludes that this action, and each of the remaining 123 actions, are related to Dr. King's Chapter 7 proceeding. The court possesses subject matter jurisdiction pursuant to sections 1334(b) and 1452(a).

B.   Abstention and Remand

Having determined that the exercise of removal jurisdiction is proper, the court may examine the propriety of discretionary abstention or remand pursuant to 28 U.S.C. §§ 1334(c)(1)-(2) and 1452(b), which respectively provide as follows:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising

> under title 11 or arising in or related to a case under title 11.
>
> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(1) and (2).

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. . . .

28 U.S.C. § 1452(b).  Inasmuch as the propriety of removal is at issue, the court addresses, in lieu of abstention under section 1334(c)(1) and (2), whether equitable remand is appropriate under section 1452(b).[4]

Some of the applicable factors that courts have considered include the following:

---

[4]That choice is of little practical moment.  The factors to be considered for either abstention or equitable remand overlap and are completely discretionary.  1 William L. Norton, Jr., Norton Bankruptcy Law and Practice § 4:38 (3d ed. 2000) ("The test for remand pursuant to § 1452(b) is akin to the test for permissive abstention pursuant to 28 U.S.C.A. § 1334(c)(1)."); see also 1 Collier on Bankruptcy § 3.07[5] (15th ed. 1999) (noting section 1452(b) "gives broad discretion to . . . remand . . . . on 'any equitable ground,' a term that includes almost any ground believed appropriate by a court.").

> 1. Whether judicial resources will be duplicated; 2. What is the most economical use of judicial resources; 3. What will be the effect of remand on the administration of the bankruptcy estate; 4. Whether questions of state law, which are better addressed by state court, are involved; 5. Whether considerations of comity exist; 6. The degree of prejudice, if any, to the involuntarily removed party; 7. Whether the possibility of an inconsistent result is lessened by remand; and 8. The expertise of the court where action originated.

Norton supra § 7.2 (footnotes omitted).

Defendants' primary argument in favor of retained federal jurisdiction is their fear of an irremediable taint present in the county jury pool:

> Dr. King is a man who has been portrayed by local media as a monster. Although he was licensed to practice medicine in West Virginia and was an experienced surgeon with residency training, the media has characterized him as an imposter – a 'chameleon' who pretended to be something he was not. Literally hundreds of television, radio, and newspaper stories have been published about Dr. King. They are nearly all negative, depicting him as a 'criminal' and 'snake-oil salesman' who ran away from West Virginia leaving hundreds of dead or crippled patients in his wake. Local television news stations have aired numerous lengthy personal-interest stories on his former patients. These pieces -- often heart-rending and moving accounts -- have detailed the allegations in particular cases and have aired shocking images of pus-filled wounds and stumps of amputated legs. Much of it appears to have been orchestrated by plaintiffs' counsel, who appear in countless radio, television, and newspaper stories to argue their cases through the press. . . . . Given this barrage of pre-trial publicity, it would be unrealistic to expect that any Putnam County juror could be impartial.

(Def.'s Resp. at 9 (quoting Defs.' Jt. Mot. to Trans. Venue filed in circuit court)).

Defendants' concerns are no small matter.  At the same time, however, many other factors weigh in favor of equitable remand.  First, remand presents no significant estate administration concerns.  While the court has found subject matter jurisdiction present according to the generous standard applicable in this circuit, one cannot ignore the very limited nature of the estate as it is now seen.

Second, while some discrete issues respecting federal law have arisen in this action and the mass removal, they are quite limited.  The far greater number of extant issues in these cases are routine factual questions presented under state law negligence and damage theories that state circuit courts encounter with some frequency.  When complex issues have arisen in these cases, they appear to have been of a peculiarly state law variety.  Plaintiff also identifies a number of state law questions of first impression that are best left to the circuit court.  (Pl.'s Memo. in Supp. at 9-10 (noting unusual issues respecting negligent credentialing and privileging claims, including burden of proof, proximate cause, and the application of the state's peer review statute).

16

Third, regarding the most efficient and economical use of judicial resources, it is noteworthy that the busy circuit court has undertaken extensive efforts to prepare these cases for trial.  The now-concluded, nine-day long negligent credentialing trial, along with the apparent proliferation of pretrial discovery and legal issues, illustrate that Judges Spaulding and Eagloski have devoted an immense amount of time toward managing these cases and preparing them for trial.[5]  In the course of doing so, the Judges, already skilled in the state law issues presented in these actions, have gained an impressive degree of expertise in these particular cases.

Additionally, as defendants forthrightly concede, Judges Spaulding and Eagloski have resolved the issues presented

---

[5] The court has considered as well the burden placed upon the circuit court by the litigation and its ability to expeditiously resolve the cases.  Indeed, Judge Spaulding has apparently "predicted that <u>no more than</u> six or seven malpractice cases could be tried in his court by the end of 2008."  (Defs.' Resp. at 16 (emphasis in original).  Additionally, defendants contend that "[discovery has been completed in a small minority of cases, and no more than four are ready for trial."  (<u>Id.</u> at 17).  Balanced against these contentions, however, are the weighty assertions that the circuit judges have "issued 52 substantive written Orders dealing with scheduling, dispositive issues and discovery, as well as having issued at least 80 rulings from the Bench -- not including those made during the first negligent credentialing and privileging trial."  (Pl.'s Memo. in Supp. at 17).  At bottom, there is little to suggest that these cases might be developed and resolved more expeditiously and efficiently in a federal forum.

to them in an unbiased and impartial manner, resulting in defendants "obtain[ing] a number of favorable rulings . . . ." (Defs.' Resp. at 13-14 n. 13).[6]  A forum switch at this juncture would require perhaps multiple judicial officers in this district to familiarize themselves with the voluminous record and rulings made in the circuit court.  Comity is necessarily threatened in such a setting.[7]

---

[6]The quality of the circuit bench also serves to ameliorate defendants' concerns with the jury pool.  The presiding judges have not hesitated to act when juror partiality has appeared. (Defs.' Resp. at 12 (noting "an astonishing 60% of the potential jurors were stricken <u>for cause</u>.")(emphasis in original).  There is no reason to believe the judges will depart from their evident desire to assure justice is done in these actions.

[7]As noted, the parties essentially conceded that the remand issues were identical across all of the removed actions. Defendants have, however, observed as follows in their response:

> In addition, the Court should not view the issue as whether it should remand 124 cases, or keep 124 cases. The cases arise from Dr. King's tenure at the Hospital, but there is no class action, putative or otherwise, and each case retains its individual character. If any given case is related to King's bankruptcy and, in fairness, should be heard in this Court, then it should be heard in this Court. And the presence or absence of 123 arguably similar cases should not deprive Defendants of their opportunity -- expressly and deliberately provided by the Congress of the United States -- to have that case heard in this Court. Plaintiffs ought not be able to crush Defendants' rights by simply suing them so many times that respect for those rights is inconvenient or even onerous.

(Defs.' Resp. at 16-17).  Defendants have not undertaken a case-by-case examination of whether the applicable factors support retained federal jurisdiction.  Absent that treatment, an amalgamated approach remains appropriate.

The analysis illustrates that a majority of the applicable factors weigh in favor of equitable remand. See <u>Barge v. Western Southern Life Ins. Co.</u>, 307 B.R. 541, 548 (S.D. W. Va. 2004). The court, accordingly, concludes that equitable remand is appropriate pursuant to section 1452(b).

### III.

Based upon the foregoing analysis, the court ORDERS as follows:

1. That plaintiff's consolidated motion to remand be, and it hereby is, granted;

2. That this memorandum opinion and order be, and it hereby is, deemed applicable to the remaining 123 removed actions; and

3. That each of the 124 removed actions, be, and they hereby are, remanded to the Circuit Court of Putnam County for all further proceedings.

19

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and a certified copy to the clerk of court for the Circuit Court of Putnam County.

ENTER: March 13, 2008

John T. Copenhaver, Jr.
United States District Judge